J-S21018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JULIAN EDWARD LARKINS | : | |
| | : | |
| Appellant | : | No. 1241 WDA 2017 |

Appeal from the PCRA Order April 20, 2017
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0015679-2009, CP-02-CR-0017394-2009

BEFORE:  OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.:                      **FILED MAY 08, 2018**

Julian Edward Larkins (Appellant) appeals from the order dismissing, after a hearing, his first petition filed pursuant to the Post Conviction Relief Act[1] (PCRA).  We affirm.

In the early morning hours of October 15, 2009, the victims, Herman Moore and Stefan Whitfield, were outside the Mac-Can-Do Bar in the Homewood section of Pittsburgh.  Gunshots were fired and both men ran.  Moore was shot in the arm and survived.  Whitfield was shot in the head and died.

Meanwhile, just prior to the gunshots, Donald Wilson was driving nearby.  Wilson was a retired police officer and then-owner of a security firm

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

that was providing security services at a housing community three blocks from the Mac-Can-Do Bar. Wilson's employee, Derek Vasser, was driving another vehicle in front of Wilson. Wilson heard gunshots behind his vehicle, looked in his rearview mirror, and saw gun flashes. Wilson put his vehicle in reverse and saw the shooter, Appellant, run across a vacant lot. Vasser, whose car was equipped with a spotlight, began to follow Appellant and saw him attempt to hide under a white SUV. Vasser exited his vehicle, drew his weapon, and attempted to handcuff Appellant. Wilson, now on foot, assisted until the police arrived shortly thereafter. Both Wilson and Vasser testified at trial that the person they saw running was wearing a gray hooded sweatshirt. N.T. Trial Vol. I, 1/10/12, at 267, 274, 367.[2]

Pittsburgh Police Officer Daniel Zeltner arrived at the intersection where Appellant was being detained by Wilson and Vasser. Officer Zeltner observed that Appellant was wearing a gray hooded sweatshirt. N.T. Trial Vol. II, 1/12/12, at 75. Pittsburgh Police Detective Charles Hanlon took into evidence Appellant's gray hooded sweatshirt; the sweatshirt said "Illinois Wesleyan" on the front and "Titans" on the left sleeve. N.T., 1/10/12, at 277; N.T., 1/12/12, at 113-14. The police recovered a gun under the white SUV, which was shown

---

[2] The cover of Trial Volume I is dated January 10 to January 11, 2012. For ease of reference, our citations to this volume will simply refer to the date "1/10/12." Similarly, the cover of Trial Volume II is dated January 12 to January 17, 2012, and we cite it simply as "1/12/12."

to match 20 spent cartridge cases found near Whitfield. A DNA sample retrieved from the gun was comparable to Appellant's DNA, such that he could not be excluded as a possible source of the DNA on the gun.

With respect to the shooting death of Whitfield, Appellant was charged at docket CP-02-CR-0015679-2009 with criminal homicide and discharging a firearm into an occupied structure. At docket CP-02-CR-0017394-2009, Appellant was charged with attempted murder and aggravated assault in relation to Moore.

Appellant proceeded to a jury trial on January 10, 2012. Pertinently, the Commonwealth sought to play, during examination of its witness Pittsburgh Police Detective Robert Renk, 19 phone conversations recorded in an unrelated wiretap investigation. Appellant was a participant in these conversations, two of which occurred in May 2009 and the remaining 17 over a 63-minute period on August 23, 2009 (approximately 1½ months before the shooting). N.T. Trial Vol. II, 1/12/12, at 8. The Commonwealth's offer of proof was that the recordings would show that Appellant had planned to kill Herman Moore at the Mac-Can-Do Bar on August 23, 2009. Outside of the jury's presence, Appellant's attorney[3] (Trial Counsel) objected to the recordings on the grounds that the conversations were too remote in time;

_____

[3] The trial transcripts indicate that Appellant was represented by Robert Stewart, Esq., and Sarah Holt, Esq. In this memorandum, "Trial Counsel" refers to Attorney Stewart.

the conversations referred to "Fat Herm," but Moore had denied at trial that he goes by that nickname; the conversations referred to unrelated criminal cases; and the prejudicial effect of the recordings far outweighed their probative value. *Id.* at 5-6. Appellant also objected to any testimony by Detective Renk interpreting the phone conversations, including references to locations and gang lingo used by the speakers. *Id.* at 9. The court allowed the recordings but advised Trial Counsel that he could object to particular testimony by Detective Renk as it arose and could cross-examine him. *Id.* at 14. Trial Counsel made a general objection just before the Commonwealth played the recordings, but did not raise any particular objection thereafter. *See id.* at 23-43.

Wilson, Vasser, Officer Zeltner, Detective Hanlon, and Pittsburgh Police Detective Timothy Nutter — who also responded to the scene that evening — testified that Appellant was wearing a gray hooded sweatshirt while and after he was detained by Wilson and Vasser. N.T., 1/10/12, at 267, 274, 367; N.T., 1/12/12, at 113. Detective Hanlon testified that he collected Appellant's sweatshirt as evidence, and Detective Nutter stated he was present when Detective Hanlon did so. N.T., 1/10/12, at 121-22; N.T., 1/12/12, at 114. The Commonwealth introduced into evidence both the sweatshirt and a photograph of the sweatshirt. Trial Counsel did not object to either. Wilson and Detective Hanlon both identified the actual sweatshirt presented at trial as matching the one Appellant was wearing on the night of the incident. N.T.

Trial I at 277; N.T. Trial II at 144. Vasser and Detective Nutter stated that the sweatshirt in the Commonwealth's photograph matched the sweatshirt worn by Appellant. N.T. Trial I at 114, 277. Appellant did not present any evidence or testify.

The jury found Appellant guilty of first-degree murder and all remaining charges. On April 10, 2012, the trial court imposed a mandatory life imprisonment term for first-degree murder, a concurrent term of 3½ to 7 years for discharging a firearm into an occupied structure, and a consecutive term of 8½ to 20 years for attempted murder.

Appellant took a direct appeal, raising several challenges to the admission of the wiretap phone recordings. Pertinently, this Court found that Appellant waived his claim that Detective Renk provided speculative interpretations of the phone conversations, observing that there was no objection to any particular testimony by the detective. This Court affirmed the judgment of sentence on January 22, 2014, and our Supreme Court denied allowance of appeal on August 21, 2014.[4]

On May 1, 2015, Appellant filed a *pro se* timely PCRA petition. Present counsel was appointed to represent him, and she filed an amended petition,

---

[4] ***Commonwealth v. Larkins***, 210 WAL 2014 (Pa. Aug. 21, 2014); ***Commonwealth v. Larkins***, 800 WDA 2012 (unpublished memorandum) (Pa. Super. Jan. 22, 2014).

arguing that Trial Counsel was ineffective for not objecting to the introduction of the phone recordings, the hooded sweatshirt, and the photograph of the hooded sweatshirt, as well as not investigating what Appellant was wearing on the night of the shooting. The PCRA court[5] conducted an evidentiary hearing on March 6, 2017. Appellant testified that before and during trial, he told Trial Counsel that he did not wear the "Illinois Wesleyan" sweatshirt, as alleged by the Commonwealth, and that the police never took his sweatshirt from him. Appellant also played television news footage, which showed him walking out of police headquarters on the night of the shooting wearing a different gray, zip-up hooded sweatshirt that had no writing on it.[6] Appellant further testified that he had asked Trial Counsel to investigate the news video, but Trial Counsel did not do so.

The PCRA court determined that Appellant's issues were meritless, and dismissed his petition on April 20, 2017. Appellant timely appealed and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors.

Appellant presents the following issues for our review:

I. Whether Appellant's prior counsel was ineffective which in the circumstances of the particular case, so undermined the truth - determining process that no reliable adjudication of guilt or innocence could have been taken. Specifically:

a. Trial Counsel was ineffective for failing to raise [a] specific objection to the wiretapped phone calls introduced by the

_____

[5] The same judge presided over both the trial and PCRA proceedings.

[6] Appellant was taken from police headquarters to jail.

- 6 -

Commonwealth at trial[.]

b. Trial Counsel was ineffective for failing to investigate the Commonwealth's evidence relating the hoodie allegedly worn by Appellant at the scene of the crime.

c. Trial Counsel was ineffective for failing to object to the introduction of the picture of the physical hoodie allegedly worn by Appellant at the scene of the crime.

II. There was a violation of the Constitution of this Commonwealth or the constitution of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

III. The trial court erred in denying the PCRA petition after the hearing.

Appellant's Brief at 5.

Appellant first avers that Trial Counsel was ineffective for "failing to raise specific objections to the wiretapped phone calls introduced by the Commonwealth at trial." *Id.* at 15. Appellant points out that the trial court advised Trial Counsel that he could raise specific objections to Detective Renk's testimony, but Trial Counsel failed to do so, and this failure resulted in waiver of any challenge to the recordings on direct appeal. Appellant concludes:

[His] underlying claim has arguable merit. Trial [C]ounsel's failure to raise timely objections to prejudicial and speculative testimony in these telephone conversations was certainly not in . . . Appellant's best interest. Further, [Trial Counsel's] unreasonable performance severely prejudiced Appellant as Appellant would have been able to have these claims decided by this . . . Court on appeal. . . . Therefore, Appellant should have been granted relief under the Amended PCRA Petition.

*Id.* at 17.

> We note the relevant standard of review:
>
> In reviewing the denial of PCRA relief, we examine whether the PCRA court's determinations are supported by the record and are free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a de novo standard of review to the PCRA court's legal conclusions. We review a PCRA court's denial of an appellant's request for discovery for abuse of discretion.

***Commonwealth v. Roney***, 79 A.3d 595, 603 (Pa. 2013) (citation omitted).

> Counsel is presumed effective, and the petitioner bears the burden of proving otherwise. To prevail on an ineffectiveness claim, the petitioner must plead and prove, by a preponderance of the evidence, the following three elements: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction.

*Id.* at 604 (citations omitted).

The PCRA court found that, where Trial Counsel had objected generally to the phone recordings, Appellant's PCRA petition failed to explain "what other 'specific' objections should have been made." PCRA Court Opinion, 12/14/17, at 2. On appeal, Appellant does not address nor refute this analysis — indeed, his entire discussion is a near-verbatim reproduction of the argument in his amended PCRA petition.[7] While Appellant characterizes Detective Renk's testimony as "prejudicial and speculative," Appellant does

---

[7] The only variations were the manner in which he referred to the courts, *e.g.* "the Court" in the amended PCRA petition was replaced with "the lower court" in his appellate brief.

not provide any further explanation to support this assertion. Additionally, aside from his final sentence, which claims that he should have been granted PCRA relief, Appellant does not frame his issue with respect to any error by the PCRA court, but instead would have this Court review his claim *de novo*. In the absence of any developed claim of error by the PCRA court, no relief is due. **See Roney**, 79 A.3d at 603.

We address Appellant's next two claims together. First, he avers Trial Counsel was ineffective for not investigating the Commonwealth's allegation that on the night of the shooting, he was wearing the "Illinois Wesleyan" sweatshirt. Appellant maintains the Commonwealth used the sweatshirt to identify him as the shooter, and that he had denied wearing that sweatshirt to Trial Counsel. Appellant contends that had Trial Counsel investigated his claim, the sweatshirt could have been excluded.[8] Next, Appellant alleges Trial Counsel was ineffective for failing to object to the introduction of the sweatshirt and the photograph of the sweatshirt at trial.

The PCRA court found that the reason for Appellant's wearing a different sweatshirt than the one introduced at trial was simply that investigators had seized his sweatshirt at the time of his arrest (as testified to at trial by Detectives Hanlon and Nutter) and thereafter provided him with a different one to wear. The PCRA court also emphasized that five trial witnesses

_____

[8] This argument is also a near-verbatim reproduction of the pertinent discussion in his amended PCRA petition.

- 9 -

described Appellant's sweatshirt on the night of the shooting. Additionally, in asserting that the Commonwealth had relied on the sweatshirt to identify him as the shooter, Appellant ignores the substantial evidence against him at trial: both Wilson and Vasser saw him running immediately after the gunshots were fired, they observed him attempt to hide under an SUV, a gun found under the SUV matched spent gun casings found next to the victim Whitfield, and recorded phone conversations showed that Appellant had attempted to kill Moore 1½ months earlier. Thus, Appellant has failed to establish that his underlying claims have merit. *See Roney*, 79 A.3d at 604. Furthermore, in finding that the detectives took Appellant's sweatshirt into evidence, the PCRA court discredited Appellant's PCRA hearing testimony that his sweatshirt was never taken from him and he was wearing a plain gray sweatshirt. This credibility determination is binding on this Court, and we may not supplant it with our own. *See id.* at 603. The PCRA court properly denied relief.

As Appellant has not demonstrated that he is entitled to relief, we affirm the order dismissing his PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/8/2018